## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JO A. STAINSBY,<br>LEKENYA ANTWINE, and<br>CATINA BAKER,<br><br>   Plaintiffs,<br><br>v.<br><br>THE STATE OF OKLAHOMA, ex rel. THE<br>OKLAHOMA HEALTH CARE AUTHORITY,<br><br>   Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)  Case No. CIV-21-1073-D<br>)<br>)<br>)<br>)<br>) |

## <u>ORDER</u>

After decades of employment at the Oklahoma Health Care Authority, Plaintiffs Jo A. Stainsby and Lekenya Antwine were terminated by their respective supervisors in September 2019.[1] Plaintiffs allege that they were terminated on the basis of their gender plus age in violation of the Title VII of the Civil Rights Act of 1964 and the Oklahoma Anti-Discrimination Act. Now before the Court is Defendant's Motion for Summary Judgment [Doc. No. 48]. The matter is fully briefed [Doc. Nos. 57, 60] and at issue.

## FACTUAL BACKGROUND

The Oklahoma Health Care Authority is a state agency that administers Oklahoma's Medicaid Program. *See* Def.'s Undisputed Material Fact ¶ 1. In mid-August 2019, Ellen Buettner became the new Chief of Staff at the OHCA. *Id.* at ¶ 2. Four women over the age

---

[1] The parties represent in their briefing that the claims brought by Catina Baker have been resolved and are no longer at issue.

of forty who were part of OHCA's leadership were terminated or left the agency around this same time. *See* Pl.s' Additional Facts ¶ 3. Based on Ms. Buettner's belief that several areas in the OHCA had more supervisors than necessary or inefficient reporting structures, Ms. Buettner requested that OHCA Directors evaluate their respective organizations to determine if any changes could be made, including the potential for positions to be eliminated or termination of employees with performance issues. Def.'s UMF ¶¶ 3-6. There was no written plan or program to reorganize or improve efficiency at the OHCA. Pl.s' Facts ¶ 4.

### Ms. Stainsby's Termination

Also in August 2019, Shelley Zumwalt joined the OHCA as the Chief Communications and Strategic Engagement Officer. Ms. Zumwalt was the direct supervisor of Plaintiff Jo A. Stainsby. Ms. Stainsby held the position of Director in the Office of Public Information and had worked for the OHCA for approximately 20 years. In addition to Ms. Stainsby, Ms. Zumwalt supervised four other Directors: Daryn Kirkpatrick (a 37-year-old female), Dana Miller (a 44-year-old female), Michelle Patterson (a 52-year-old female), and Fred Oraene (a 38-year-old male). Def.'s UMF ¶¶ 8-14; Pl.s' Facts ¶ 28.

Approximately two weeks after her arrival at OHCA, Ms. Zumwalt terminated Ms. Stainsby. Ms. Stainsby was 55 at the time of her termination. Ms. Zumwalt testified that Ms. Stainsby was terminated because of performance issues, and testified to several instances where she failed to adhere to deadlines or produced poor quality work. Def.'s

UMF ¶¶ 16-23. Ms. Stainsby disputes Ms. Zumwalt's version of events and denies that the conversations, deadlines, and assignments occurred as described.

One week after Ms. Stainsby's termination, Ms. Zumwalt hired Jonathan Cannon (a 34-year-old male) as a Senior Director[2] in the communications department. The position was not a competitive appointment – Mr. Cannon was a former coworker of Ms. Zumwalt and she recruited him to work for her. Mr. Cannon supervised more individuals than Ms. Stainsby and had different job responsibilities. *Id.* at ¶¶ 26-27; Pl.s' Facts ¶ 34.

Ms. Stainsby filed a charge of discrimination with the Equal Employment Opportunity Commission on September 3, 2019 asserting that she was terminated on the basis of her gender and age. In its position statement responding to the EEOC charge, the OHCA stated that Ms. Stainsby was discharged because the OHCA was "moving in another direction and trying to accomplish cost savings and restructuring; and based upon job performance and conduct issues." Def.'s Ex. 14; Pl.s' Ex. 20.

**Ms. Antwine's Termination**

On September 5, 2019, Melody Anthony, the Chief Operating Officer/State Medicaid Director of the OHCA, became Ms. Antwine's supervisor. Pl.'s Facts ¶ 8. Ms. Antwine was the Quality Assurance & Community Living Services Director and had worked for the OHCA for nearly 18 years. *Id.* at ¶ 6. Ms. Antwine's position involved the supervision of two teams, one headed by David Ward (a 41-year-old male) and another that included a small group of nurses. Ms. Anthony terminated Ms. Antwine just three

---

[2] The evidence reflects that Mr. Cannon was originally hired as a Director but his job title was changed to Senior Director after his hiring was announced. Pl.'s Ex. 8 and 9.

weeks after becoming her supervisor. Ms. Antwine was 44 years old at the time of her termination. Def.'s UMF ¶¶ 35, 38.

Ms. Anthony testified that in August or September 2019 she was encouraged by OHCA leadership to review the organizational structure of her work group. She concluded that Ms. Antwine's position could be eliminated because the reporting structure of the position was inefficient, she perceived that Mr. Ward was already conducting the work Ms. Antwine should be doing, and she was informed of a complaint by Mr. Ward against Ms. Antwine. *Id.* at ¶¶ 33-36. There is no evidence indicating that the complaint was investigated. Ms. Antwine disputes that a complaint was made and disputes that Ms. Anthony could have formulated any perception of her work given their limited interactions. Following the termination, the nurse group was moved to another area of the OHCA and Mr. Ward's team was moved under the supervision of a senior director within the department. *Id.* at ¶ 37. Ms. Antwine had previously received overall employment reviews of "exceeds standards"; Mr. Ward's most recent overall employment review was "meets standards." Pl.'s Facts ¶ 13, 21.

Ms. Antwine filed a charge of discrimination with the Equal Employment Opportunity Commission on September 26, 2019, asserting that she was terminated on the basis of her gender and age. In its position statement responding to the EEOC charge, the OHCA stated that Ms. Antwine was discharged because the OHCA was "moving in another direction and trying to accomplish cost savings and restructuring, and based upon complaints" regarding Ms. Antwine's leadership. The OHCA's position statement also represents that from September 2019 to July 2020, the average age of female employees at

4

the management level of Ms. Stainsby and Ms. Antwine dropped from 49.63 to 45.53.
Def.'s Ex. 19; Pl.'s Ex. 15.

## STANDARD OF DECISION

Summary judgment is proper "if the movant shows that there is no genuine dispute
as to any material fact and the movant is entitled to judgment as a matter of law." FED R.
CIV P. 56(a). A material fact is one that "might affect the outcome of the suit under the
governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is
genuine if the facts and evidence are such that a reasonable juror could return a verdict for
either party. *Id*. All facts and reasonable inferences must be viewed in the light most
favorable to the nonmovant. *Id*.

## DISCUSSION

### A. Claims under the Oklahoma Anti-Discrimination Act

The Oklahoma Anti-Discrimination Act prohibits employers from discriminating
against an employee "because of race, color, religion, sex, national origin, age, genetic
information or disability." Okla. Stat. Ann. tit. 25, § 1302(A). The OADA requires an
aggrieved party to file a charge of discrimination with either the Attorney General's Office
of Civil Rights Enforcement or the Equal Employment Opportunity Commission before
filing suit for employment discrimination. *Id.* at § 1350(B).

Defendant concedes that Plaintiffs filed a charge of discrimination with the EEOC
but contends that summary judgment on the OADA claim is nevertheless required because
Plaintiffs failed to comply with the pre-suit notice requirements of another state statute: the
Oklahoma Governmental Tort Claims Act, Okla. Stat. Ann. tit. 51, § 151 et seq. Under the

5

GTCA, a plaintiff is required to submit a tort claim notice to the appropriate state agency before bringing a cause of action in tort against the state. *Id*. at §§ 156-157. Citing to *Duncan v. City of Nichols Hills*, 913 P.2d 1303, 1309 (Okla. 1996), Plaintiffs contend a failure to comply with the GTCA's pre-suit notice provisions does not bar their OADA claims.

In *Duncan*, the Oklahoma Supreme Court held that a plaintiff asserting a claim for employment discrimination under state anti-discrimination laws was not required to comply with the pre-suit notice provisions of the GTCA. *Id*. at 1304. *Duncan* perceived a conflict between the two-year limitations period contained in the anti-discrimination laws in effect at the time and the GTCA's shorter limitations period. *Id*. at 1305. The Court resolved the conflict in favor of the OADA's longer limitations period because the "stated purpose of the Oklahoma anti-discrimination statutes is to implement the policies of the federal Civil Rights Laws" and a plaintiff alleging a "civil rights violation under a state statute expressly intended to parallel federal remedies" should not face a shorter limitations period. *Id*. at 1309. The Court further explained that compliance with the GTCA's general notice provisions was not required because the anti-discrimination law was a "specific statute" which "control[s] and act[s] as an exception to a statute of general applicability." *Id*. at 1310. However, *Duncan* also recognized that "[h]ad [the plaintiff] asserted a cause of action in tort, ...the plain language of the [GTCA] requires compliance with the notice provisions of the [GTCA]." *Id*. at 1309-10.

Although *Duncan* appears to foreclose Defendant's argument, much has changed since that case was decided. As another court in this district recently explained, "the

disability-discrimination provision of the OADA that was at issue in that case has been repealed, a cause of action for employment-based discrimination has been created under a separate section, and the stated purpose of the OADA has been amended such that it no longer expressly references federal civil rights law." *Hauck v. Putnam City Indep. Sch. Dist. I001*, No. CIV-20-390-G, 2022 WL 3654749, at *3 (W.D. Okla. Aug. 24, 2022). Additionally, "unlike with the disability-discrimination provision at issue in *Duncan*," it appears that the time limits imposed by the OADA's notice provisions no longer exceed the GTCA's limitations period. *Id.* Most significantly, the GTCA's definition of a "tort" has been amended so that it now includes "a violation of a duty imposed by…statute." Okla. Stat. tit. 51, § 152(14).

These developments compel a finding that compliance with the GTCA's notice provisions is a prerequisite to bringing a claim under the OADA. Under the amended version of the GTCA, Plaintiffs' OADA claims qualify as torts.[3] And, as *Duncan* itself recognized, "a plaintiff alleging a cause of action in *tort* against the state or political subdivision must comply with the notice provisions of the [GTCA]." *Duncan*, 913 P.2d at 1307 (italics in original). Notably, several other judges in this district have applied the GTCA's pre-suit notice requirements to OADA claims. *See Hauck*, 2022 WL 3654749 at 3 (collecting cases).

---

[3] Prior to the amendments to the GTCA, this Court interpreted *Duncan* as holding that OADA claims are not tort claims. *See Wright v. KIPP Reach Acad. Charter Sch.,* No. CIV-10-989-D, 2011 WL 1752248, at *6 (W.D. Okla. May 6, 2011); *Hall v. Oklahoma Dep't of Rehab. Servs*., No. CIV-17-497-D, 2018 WL 991543, at *7 n. 8 (W.D. Okla. Feb. 20, 2018). However, as explained above, changes in the law now require a different conclusion.

Here, Plaintiffs have not pled compliance with the GTCA and Defendant has presented evidence indicating that neither Ms. Stainsby nor Ms. Antwine submitted a tort claim notice. Plaintiffs do not dispute this but argue that they substantially complied with the GTCA's notice provisions by submitting a charge of discrimination to the EEOC.[4] This Court has previously concluded that filing an EEOC charge of discrimination does not satisfy the GTCA's notice provision requirements. *Wright*, 2011 WL 1752248, at *8. The Court sees no reason to reach a different conclusion here.

Written notice is a jurisdictional prerequisite to a civil action under the GTCA. Okla. Stat. Ann. tit. 51, § 157. Plaintiffs have not pled compliance with the GTCA and their EEOC charge of discrimination does not constitute notice under the GTCA. Accordingly, the Court lacks jurisdiction to consider Plaintiffs' claims under the OADA and Defendant is entitled to summary judgment.

**B. Claims under Title VII**

Title VII forbids employment discrimination based on "race, color, religion, sex, or national origin." 42 U.S.C.A. § 2000e-2. Here, Plaintiffs allege they were unlawfully discriminated against on the basis of their sex-plus-age. In other words, they allege that they were fired because they are "older women." Pl.s' Br. at 1.

In *Frappied v. Affinity Gaming Black Hawk, LLC*, 966 F.3d 1038, 1048 (10th Cir. 2020), the Tenth Circuit recently recognized "that sex-plus-age claims are cognizable

---

[4] Plaintiffs also assert that Defendant failed to raise non-compliance with the GTCA as an affirmative defense and it is therefore waived. However, Defendant's Answer [Doc. No. 11] raised failure to exhaust administrative remedies as a defense.

under Title VII." *Id.* at 1046. However, because age is not a protected class under Title VII, sex-plus-age "discrimination claims must be premised on sex alone." *Id.* A sex-plus-age claim "is thus a sex discrimination claim, albeit one that alleges that the discrimination was based only in part on sex." *Id.* at 1048. *Frappied* also explained that, "[l]ike any other sex-plus plaintiff, a sex-plus-age plaintiff must show unfavorable treatment relative to an employee of the opposite sex who also shares the 'plus-' characteristic." *Id.* "For the female sex-plus-age plaintiffs in this case, the relevant comparator would be an older man." *Id.* at 1048.

To succeed on their sex-plus-age claims, Plaintiffs bear the ultimate burden of proving that their employer intentionally discriminated against them based, at least in part, on their sex. *Bostock v. Clayton Cnty., Ga*, __ U.S. __, 140 S. Ct. 1731, 1741 (2020); *Ford v. Jackson Nat'l Life Ins. Co.*, 45 F.4th 1202, 1213 (10th Cir. 2022). Plaintiffs do not purport to have any direct evidence of discrimination, so they must instead "rely on the *McDonnell Douglas* burden-shifting framework to establish indirect evidence of discrimination." *Ford*, 45 F.4th at 1215.

Under this framework, a plaintiff seeking to avoid summary judgment must first "raise a genuine issue of material fact on each element of the prima facie case, as modified to relate to differing factual situations." *Id.* (quotation omitted). If the plaintiff does so, "the burden then shifts to the employer to offer a legitimate nondiscriminatory reason for its employment decision." *Id.* (quotation omitted). "[A]t the final step, the burden shifts back to the plaintiff to demonstrate that the employer's explanations were pretextual—i.e., unworthy of belief." *Id.* (quotation omitted).

### 1.  Prima Facie Case

For a sex discrimination claim, a prima facie case "must consist of evidence that (1) the victim belongs to a protected class; (2) the victim suffered an adverse employment action; and (3) the challenged action took place under circumstances giving rise to an inference of discrimination." *E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007). A sex discrimination plaintiff can establish circumstances giving rise to an inference of discrimination in multiple ways. For example, a plaintiff alleging a discriminatory discharge may show that, despite being qualified for her position, she was terminated and the position was not eliminated. *Adamson v. Multi Cmty. Diversified Servs., Inc*., 514 F.3d 1136, 1150 (10th Cir. 2008).[5] Alternatively, a plaintiff may "show that the employer treated similarly situated employees more favorably." *E.E.O.C. v. PVNF, L.L.C.,* 487 F.3d 790, 800-01 (10th Cir. 2007). And recall that in *Frappied*, the Tenth Circuit stated (no less than three times) that a female sex-plus-age plaintiff "must show" unfavorable treatment relative to an older male. *Frappied*, 966 F.3d at 1047, 1048, 1051.

Neither party explicitly addresses Plaintiffs' prima facie case of sex-plus-age discrimination. In its opening brief, Defendant explained that it was interpreting Plaintiffs' Petition as raising claims for sex discrimination, age discrimination, and sex-plus-age discrimination. Def.'s Br. at 1. Defendant then assumed Plaintiffs had established a prima facia case of sex discrimination under Title VII. *Id*. at 22. With respect to the sex-plus-age

---

[5] However, "where an employer contends the actual reason for termination in a discriminatory firing case is not elimination of the employee's position but, rather, unsatisfactory conduct, the status of the employee's former position after his or her termination is irrelevant." *Plotke v. White*, 405 F.3d 1092, 1100 (10th Cir. 2005).

claim, Defendant argued that the claim fails as a matter of law because Plaintiffs cannot identify an appropriate comparator, i.e., an older male who was treated more favorably. Defendant did not, however, explicitly argue that this failure undermined Plaintiffs' burden to establish a prima facie case or show circumstances giving rise to an inference of discrimination. *Id.* at 29. In their response brief, Plaintiffs specified that they are pursuing only a sex-plus-age discrimination claim. Pl.s' Br. at 18. Then, noting that Defendant assumed a prima facie case of sex discrimination had been shown, Plaintiffs addressed only whether Defendant's proffered reasons for the terminations were pretextual. Plaintiffs did not, however, directly address Defendant's argument that the sex-plus-age claims fail because there is not an appropriate comparator. In their reply brief, Defendant again argued that Plaintiffs lacked evidence of an appropriate comparator but did not explicitly state that it was challenging Plaintiffs' prima facie case.

As explained above, a sex-plus-age discrimination claim under Title VII is, ultimately, a sex discrimination claim. Defendant conceded (at least for purposes of the instant motion) that Plaintiffs could establish a prima facie case of sex discrimination and did not retreat from this position in its reply brief. Accordingly, the Court will likewise assume that there is, at least, a material factual dispute as to whether Plaintiffs could establish a prima facie case of discrimination with respect to their sex-plus-age discrimination claims.

### 2. Defendant's Nondiscriminatory Explanation

At the second step of the *McDonnell Douglas* test, the defendant must articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Ford*, 45 F. 4th at

11

1215. Defendant has explained that Ms. Stainsby was terminated because her new supervisor, Ms. Zumwalt, perceived her performance to be substandard. Defendant similarly explained that Ms. Antwine was terminated because her new supervisor, Ms. Anthony, determined that the position was no longer needed, she perceived that another employee was doing Ms. Antwine's work, and she was notified that a subordinate raised a complaint about Ms. Antwine. These are nondiscriminatory reasons for terminating an employee and Plaintiffs do not contest that Defendant has met its burden at the second step.

### 3. Plaintiffs' Evidence of Pretext

At the final step of the *McDonnell Douglas* test, "the burden shifts back to the plaintiff to show that there is a genuine issue of material fact as to whether the employer's proffered reasons are pretextual." *E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007). At this step, a plaintiff is not required "to offer any evidence of actual discrimination" because "[e]vidence tending to show pretext permits an inference that the employer acted for discriminatory reasons." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1125 (10th Cir. 2005); *see also Timmerman v. U.S. Bank, N.A.*, 483 F.3d 1106, 1113 (10th Cir. 2007) ("A showing of pretext does not require a plaintiff to offer any direct evidence of actual discrimination."). Pretext is generally shown "by producing evidence of 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons.'" *Id.* at 1308 (quoting *Morgan v. Hilti, Inc*., 108 F.3d 1319, 1323 (10th Cir. 1997)). Crucially, "at the summary judgment stage, the

inference of discrimination permitted by evidence of pretext must be resolved in favor of the plaintiff." *Bryant*, 432 F.3d at 1125. "Thus, once a plaintiff presents evidence sufficient to create a genuine factual dispute regarding the veracity of a defendant's nondiscriminatory reason," the Court must "presume the jury could infer that the employer acted for a discriminatory reason and must deny summary judgment." *Id.*

To support their claim that Defendant's explanations are a mere pretext for sex discrimination, Plaintiffs first argue that Defendant's unwritten, standardless plan to improve operational efficiency "resulted in a dramatic reduction in the age of management level women at OHCA." Pl.s' Br. 21. To support this argument, they rely on the statistics included in the OHCA's position statements responding to the EEOC charges. The position statements reflect the following:

|  | 9/2019 | 7/2020 |
|---|---|---|
| Percentage of Female Employees | 79% | 78.78% |
| Average Age of Employees | 47.06 years | 46.04 years |
| Average Age of Female Employees | 47.06 years | 46.46 years |
| Percentage of Female Employees at Ms. Antwine's Managerial Level | 57% | 60% |
| Average Age of Employees at Ms. Antwine's Managerial Level | 48.26 years | 48.76 years |
| Average Age of Female Employees at Ms. Antwine's Managerial Level | 49.63 years | 45.52 years |
| Percentage of Females Hired After Ms. Antwine's Discharge |  | 64% |
| Average Age of Employees Hired After Ms. Antwine's Discharge |  | 39.81 years |
| Average Age of Female Employees Hired After Ms. Antwine's Discharge |  | 38.64 years |

Pl.'s Ex. 15.[6]

Although statistics can be relevant in demonstrating discrimination, a "company's overall employment statistics will, in at least many cases, have little direct bearing on the specific intentions of the employer when dismissing a particular individual." *Turner v. Pub. Serv. Co. of Colorado*, 563 F.3d 1136, 1147 (10th Cir. 2009) (quoting *LeBlanc v. Great Am. Ins. Co.*, 6 F.3d 836, 848 (1st Cir. 1993)); *see also Ford*, 45 F. 4th at 1217-18. Thus, as the Tenth Circuit explained in considering the role statistics play in a Title VII case,

> statistical evidence should be closely related to the issues in the case. Even statistics which show prolonged and marked imbalance may not be controlling in an individual discrimination case where a legitimate reason for the employer's action is present. Thus, the real question is whether the employment actions at issue, and those actions alone, involved discrimination on the basis of sex. In order for statistical evidence to create an inference of discrimination, the statistics must show a significant disparity and eliminate nondiscriminatory explanations for the disparity. In other words, a plaintiff's statistical evidence must focus on eliminating nondiscriminatory explanations for the disparate treatment by showing disparate treatment between comparable individuals.

*Turner*, 563 F.3d at 1147 (internal citations, quotation marks, and alterations omitted).

Plaintiffs argue that pretext can be inferred from the decrease in the average age of female managerial employees. Plaintiffs have not, however, eliminated alternative explanations for this decrease, such as voluntary resignations or retirements of managerial-level females, nor have they made any effort to explain how sex discrimination can be inferred from statistics showing an *increase* in the percentage of females at the managerial level. Thus, Plaintiffs' contention that the average age of female managers dropped by four

---

[6] The position statement responding to Ms. Stainsby's EEOC charge reflects the same statistical information. *See* Pl.s' Ex. 20.

years does little on its own to show that Defendant's proffered reasons for terminating Ms. Stainsby and Ms. Antwine specifically were a pretext for sex discrimination.

Apart from these statistics, Plaintiffs argue that other evidence at least creates a material factual dispute as to pretext. With respect to Ms. Stainsby, Defendant contends that she was terminated by Ms. Zumwalt for performance issues. Defendant's only evidence[7] in support of this contention is the deposition testimony of its employees, primarily Ms. Zumwalt. Ms. Stainsby has, however, come forward with her own testimony disputing Ms. Zumwalt's version of events. Whether Ms. Zumwalt terminated Ms. Stainsby due to a good faith belief that she was performing below standards therefore largely hinges on whose account to credit. A reasonable juror evaluating the conflicting testimony could choose to believe Ms. Stainsby's testimony, particularly given that there is no contemporaneous documentation reflecting any missed deadlines or poor work product.[8] Accordingly, there is at least a material factual dispute as to whether Defendant's

---

[7] Defendant also cites to a 2014 performance review indicating that Ms. Stainsby needed to show improvement in adhering to deadlines. This document, which preceded the termination by approximately five years, could not have contributed to Ms. Zumwalt's perception of Ms. Stainsby because Ms. Zumwalt did not review it or any other performance reviews. Pl.s' Response to Def.'s UMF ¶ 18.

[8] Defendant argues that the lack of any written plan to reorganize or any documentation regarding performance issues does not itself show pretext, particularly where there is no policy requiring written documentation. However, a lack of contemporaneous documentation evidencing a plan for reorganization, performance issues, or complaints can be evidence of pretext in certain scenarios. *See Frappied*, 966 F.3d at 1059 ("Post-hoc justifications for termination constitute evidence of pretext."); *Lloyd v. Georgia Gulf Corp.*, 961 F.2d 1190, 1195 (5th Cir. 1992) ("[W]hen an employer's stated motivation for an adverse employment decision involves the employee's performance, but there is no supporting documentation, a jury can reasonably infer pretext"); *Bolin v. Oklahoma Conf. of the United Methodist Church*, 397 F. Supp. 2d 1293, 1307 (N.D. Okla. 2005) ("A reasonable jury might consider the dearth of negative work reviews circumstantial evidence

proffered reason for terminating Ms. Stainsby was pretextual. *See Fogarty v. Gallegos,* 523 F.3d 1147, 1165 (10th Cir. 2008) ("On summary judgment, a district court may not weigh the credibility of the witnesses."); *Weir v. Anaconda Co.,* 773 F.2d 1073, 1081 (10th Cir. 1985) ("[S]ummary judgment should not be based on the deposition or affidavit of an interested party ... as to the facts known only to him—a situation where demeanor evidence might serve as real evidence to persuade a trier of fact to reject his testimony."). Further, there is some evidence that Ms. Stainsby was treated less favorably by Ms. Zumwalt than an older male employee. After her appointment, Ms. Zumwalt retained the four other director-level employees under her supervision, including Mr. Oreane, a 38-year-old male. Although Ms. Stainsby could not have performed Mr. Oreane's specific job duties, they held the same job title and both operated under Ms. Zumwalt's supervision in the communications department.

With respect to Ms. Antwine, Defendant contends she was terminated by Ms. Anthony because the reporting structure of the position was inefficient, she perceived that Ms. Antwine's subordinate – Mr. Ward – was doing her work, and Ms. Anthony was subsequently informed that Mr. Ward had complained about Ms. Antwine.[9] Once again, Defendant's evidence in support of its explanation is the deposition testimony of its

---

of pretext."). Further, in the Tenth Circuit case cited by Defendant, *Matthews v. Euronet Worldwide, Inc.*, 271 F. App'x 770, 777 (10th Cir. 2008) (unpublished), there were written attendance records, notes, and complaints that supported the supervisor's perception of the employee's deficient performance. Here, in contrast, there is conflicting testimony as to whether and how the events forming the supervisor's alleged perception occurred.

[9] These reasons are intertwined such that a factual dispute as to the pretextual nature of one of the reasons affects them all. *See Tyler v. RE/MAX Mountain States, Inc.,* 232 F.3d 808, 814 (10th Cir. 2000).

employees. There is no written record of a complaint, an investigation, performance issues, or the prospect of eliminating Ms. Antwine's position. Further, Ms. Antwine has presented her own testimony disputing that Ms. Anthony had any perception of her work product or her role at the OHCA given their limited interactions. A reasonable juror evaluating this evidence could choose to disbelieve Ms. Anthony's testimony regarding her perceptions of Ms. Antwine's work and look with skepticism on Ms. Anthony's purported reliance on a secondhand complaint that was never investigated. *See Est. of Bassatt v. Sch. Dist. No. 1 in the City & Cnty. of Denver,* 775 F.3d 1233, 1240 (10th Cir. 2014) (failure to conduct a fair investigation or hear employee's side of the story can raise an inference of pretext); *Corneveaux v. CUNA Mut. Ins. Grp.,* 76 F.3d 1498, 1504 (10th Cir. 1996) (material factual dispute as to pretext existed where employer claimed it did not hire employee because of "personality conflicts with different people" but employee introduced evidence showing that incidents were reported on secondhand basis, she had complimentary performance evaluations, and positive testimony from coworkers).

Further, there is some evidence that Ms. Antwine, an older woman who had overall job ratings of "exceeds standards," was treated less favorably than Mr. Ward, an older male with a recent overall job rating of "meets standards," following Ms. Anthony's appointment as supervisor. Although Ms. Anthony has offered post-hoc justifications for her decision to prefer Mr. Ward to Ms. Antwine, the validity of her good faith belief in these justifications is disputed.

In considering whether Defendant is entitled to summary judgment, the Court is mindful that it "must not sit as a superpersonnel department that second-guesses the

company's business decisions, with the benefit of twenty-twenty hindsight." *Frappied*, (quoting). "Title VII only prohibits discrimination on the basis of certain, invidious factors" and employers are, of course, "free to terminate at-will employees for any other reason— however unfair, unwise, or even erroneous—so long as it is not unlawful." *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1153 (10th Cir. 2008). The difficulty in this case is that Defendant has offered only post-hoc explanations and testimony that is specifically disputed by Plaintiffs' testimony. Viewing the record as a whole, and drawing all reasonable inferences in Plaintiffs' favor as the Court must, there is a material factual dispute as to whether Defendant's proffered reasons are pretextual.

## CONCLUSION

For the reasons explained above, Defendant's Motion for Summary Judgment [Doc. No. 48] is **GRANTED** in part and **DENIED** in part. The claims under the OADA are dismissed for lack of jurisdiction. Summary judgment on the Title VII claims is denied.

**IT IS SO ORDERED** this 8th day of February, 2023.

_____
TIMOTHY D. DeGIUSTI
Chief United States District Judge